## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NICOLE SWANGER,** | : | **Civil No.  3:23-cv-1730** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Brann)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MARTIN O'MALLEY,** | : | |
| **Commissioner of Social Security,**[1] | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

In many instances, the ability to reach is an essential attribute in the modern workplace. Therefore, individuals whose ability to reach has been significantly eroded by physical impairments often are unable to perform sustained work. For such disabled individuals Social Security provides a crucial financial safety net.

However, before claimants are entitled to disability benefits under the Social Security Act due to issues pertaining to their ability to reach, it must be shown that they meet the stringent requirements prescribed by law and Administrative Law

---

[1] Martin O'Malley has been appointed the Commissioner of Social. Accordingly, pursuant to the provisions of Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Martin O'Malley is substituted as the defendant in this suit.

Judges, (ALJs), are charged with the responsibility to carefully assess such claims. Further, it is the responsibility of the ALJ to clearly and thoroughly articulate the basis for the denial of a disability claim based upon reach impairments. Once the ALJ completes this task, on appeal it is the duty of the district court to review these ALJ findings, judging the findings against a deferential standard of review which simply asks whether the ALJ's decision is supported by substantial evidence in the record, see 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012), a quantum of proof which "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).

Yet while this is a deferential substantive standard of review, it is also incumbent upon the ALJ to sufficiently articulate the rationale for the decision to allow for meaningful judicial review. Where this duty of articulation is not fully satisfied, a remand is appropriate.

So it is here.

In the instant case, the ALJ denied a disability application submitted by the plaintiff, Nicole Swanger. Swanger was facing a cascading array of severe physical and emotional impairments. She suffered from rheumatoid arthritis (RA),

2

fibromyalgia, right ear hearing loss, anxiety, and history of learning disorders. (Tr. 21). In particular, Swanger noted that she was severely limited in her ability to perform work which entailed reaching overhead. Swanger's description of her impairments was supported by a lay witness, her mother. Moreover, clinical testing confirmed that Swanger suffered from rheumatoid arthritis and fibromyalgia, conditions which limited her ability to reach. Further, Swanger's treating physician, Dr. Cook, found that Swanger could never reach overhead. (Tr. 995). Finally, a state agency consultative exert, Dr. Kneifati, also found that Swanger's ability to reach was severely impaired. (Tr. 678-91). Thus, every physician who actually treated or examined Swanger concluded that she was significantly restricted in terms of her ability to reach.

Nonetheless, in denying Swanger's disability claim, the ALJ found that she could perform light work without any restrictions on her ability to reach. (Tr. 24). Then, relying upon vocational expert testimony which identified a number of jobs that entailed overhead reaching, the ALJ concluded that Swanger had not met the exacting legal standard for disability and denied her claim. Further, the ALJ followed this course without fully focusing upon, and addressing, the evidence relating to her limitation on reaching. Moreover, the ALJ supported this decision through an internally inconsistent report by a non-treating non-examining state agency expert

who acknowledged the clinical and opinion evidence identifying Swanger's reaching limitations but made no provision for those acknowledged impairments.

After a review of the record, while we regard this as a close case, we find that the ALJ failed to adequately explain this aspect of the RFC finding, and thus the ALJ's RFC determination is not supported by substantial evidence. Accordingly, we recommend that the Court remand this case for further consideration by the Commissioner.

## II.    **Statement of Facts and of the Case**

On November 11, 2020, Nicole Swanger filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning June 18, 2019. (Tr. 19). In her application, Swanger cited a cascading array of severe physical impairments as disabling, including rheumatoid arthritis, fibromyalgia, right ear hearing loss, anxiety, and history of learning disorders. (Tr. 21). Swanger was born on June 6, 1984, and was 35 years old, which is defined as a younger individual, on the alleged disability onset date. (Tr. 31). She had prior employment as a short order cook. (Tr. 30).

With respect to the impact of her impairments upon her ability to reach overhead, the clinical record, medical opinions, and Swanger's activities of daily

living confirmed that her ability to reach was compromised by her medical impairments.[2]

The clinical record in this case indicates longstanding diagnoses of medical conditions which limited Swanger's ability to reach overhead. Thus, it was reported that Swanger "was diagnosed with fibromyalgia and rheumatoid arthritis in 2018 with generalized joint pain worse in her shoulders with pain level 8/10, constant, sharp, worse with repetitive use of the hands and attempting overhead activities. She has stiffness in both shoulders." (Tr. 72). Moreover, by November of 2019, one of Swanger's care-givers, Dr. James Navalkowsky, noted her rheumatoid arthritis and indicated both that she had multiple joint pains and myalgias and that she had lost her job because she cannot tolerate the work environment. (Tr. 428).

In January of 2021, Swanger reported increased pain due to her arthritis. According to Swanger her condition had "gotten much worse, and she is having shoulder, arm, finger pain." (Tr. 653). X-rays disclosed increased arthropathy, particularly in her left, dominant hand. (Tr. 667). Thus, clinical testing confirmed this diagnosis of arthritis.

---

[2] Because we have determined that the treatment of Swanger's physical limitations, by itself, warrants a remand of this case, we have limited our review of the evidence to these physical impairments which affected her ability to reach overhead.

On March 10, 2021, Dr. Charles Henderson, who was treating Swanger, noted that she displayed "sero positivity in the x-rays reveal increased number [o]f erosions," clinical evidence of rheumatoid arthritis. (Tr. 740).  During a May 12, 2021, clinical encounter, it was reported by Dr. Henderson that: "She also has fibromyalgia which causes her a lot of generalized pain. I believe today that her diffuse pain is fibromyalgia related rather than due to inflammatory arthritis." (Tr. 737). Five days later, on May 17, 2021, Dr. Navalkowsky indicated that Swanger suffered from rheumatoid arthritis involving multiple sites and stated that she "is unable to work." (Tr. 726).

In addition to this clinical evidence confirming her diagnoses of rheumatoid arthritis and fibromyalgia, conditions which affected her ability to reach, Swanger reported on January 15, 2021, that her impairments severely limited her ability to reach stating that: "my whole body and all my movements are affected by the arthritis." (Tr. 233). A third-party report completed by Swanger's mother on January 6, 2021, also stated that her ability to reach was impaired, noting that: "all body movement is affected by arthritis." (Tr. 223).

This clinical evidence, and Swanger's corroborated account of her impairments, led every medical source who actually treated or examined the plaintiff to opine that her ability to reach was significantly compromised. On April 12, 2021,

6

Dr. Ahmed Kneifati, a consulting physician, conducted a physical examination of Swanger. (Tr. 678-91). This examination thoroughly documented Swanger's limitations in terms of overhead reaching, noting that her shoulder forward elevation, adduction, and abduction were all severely restricted. (Tr. 690). Dr. Kneifati further found that Swanger could never reach overhead and could only occasionally reach to the side. (Tr. 684).

These findings were echoed by Dr. Glenda Cook, one of Swanger's treating physicians. On April 21, 2022, Dr. Cook completed a physical residual functional capacity questionnaire for Swanger. (Tr. 992-95). Noting the clinical evidence which confirmed her rheumatoid arthritis, (Tr. 992), Dr. Cook opined that Swanger could reach overhead "0 %" of the time. (Tr. 995).

Arrayed against the consistent and mutually supportive body of evidence confirming that Swanger's ability to reach overhead was significantly compromised, was a single thin reed. The only countervailing medical opinion evidence came from a non-treating and non-examining state agency source, Dr. Lelwellwyn Raymundo. (Tr. 66-81). Yet this non-examining source opinion was internally inconsistent and could not be readily reconciled with the clinical evidence when it came to consideration of Swanger's inability to reach overhead. Thus, Dr. Raymundo acknowledged that the clinical revealed that Swanger:

> [W]as diagnosed with fibromyalgia and rheumatoid arthritis in 2018
> with generalized joint pain worse in her shoulders with pain level 8/10,
> constant, sharp, worse with repetitive use of the hands and attempting
> overhead activities. She has stiffness in both shoulders.

(Tr. 80).

Dr. Raymundo also noted that the examining expert, Dr. Kneifati, had found that Swanger could never reach overhead and only occasionally reach laterally. (Tr. 69). Dr. Raymundo conceded that this opinion was "partially supportable and partially consistent" with the clinical evidence. (Tr. 81). However, in response to the question "Does the individual have manipulative limitations?" Dr. Raymundo replied: "No." (Tr. 78-79). Dr. Raymundo did not reconcile this opinion rejecting any limitations with the evidence of reaching impairments which the doctor cited as "partially supportable and partially consistent". In the same vein, when Dr. Raymundo issued this opinion in April of 2021, the doctor did not have the benefit of Dr. Cook's treating source opinion which found that Swanger could reach overhead "0 %" of the time. (Tr. 995).

It is against the backdrop of this evidence that the ALJ conducted a hearing in Swanger's case on June 6, 2022. (Tr. 38-64). Swanger and a vocational expert ("VE") both testified at this hearing. (Id.) Following this hearing, on August 23, 2022, the ALJ issued a decision denying Swanger's application for benefits. (Tr. 16-32). In that decision, the ALJ first concluded Swanger met the insured requirements

of the Act and had not engaged in substantial gainful activity since the alleged onset

date of her disability. (Tr. 21). At Step 2 of the sequential analysis that governs

Social Security cases, the ALJ found that Swanger had the following severe

impairments: rheumatoid arthritis (RA), fibromyalgia, right ear hearing loss,

anxiety, and history of learning disorder. (Id.) At Step 3 the ALJ determined that

none of these impairments met or medically equaled the severity of any of the listed

impairments. (Tr. 22-24).

Between Steps 3 and 4 the ALJ concluded that Swanger retained the following

residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds
> that the claimant has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) except limited to occasional
> postural activities and simple, repetitive, routine tasks, cannot work at
> production rate pace, no concentrated exposure to unprotected heights
> or moving machine parts, and an SCO noise level no greater than 3.

(Tr. 24).

Notably, this RFC made no provision whatsoever for Swanger's inability to

reach overhead, a physical limitation that was fully supported by the clinical

evidence, the statements of Swanger and her mother, and was found by every

medical expert who actually treated or examined Swanger. In reaching this

conclusion the ALJ deemed all of this consistent and mutually supportive evidence

concerning Swanger's reaching limitations to be unpersuasive. (Tr. 24-30). Instead,

9

the ALJ found the outlier opinion of Dr. Raymundo which found that Swanger had no reaching restrictions to be persuasive. (Tr. 26-27). But even as the ALJ adopted this non-examining source opinion, the ALJ's decision cited evidence relied upon by Dr. Raymundo which undermined that opinion, stating that:

> As a State agency consultant, Dr. Raymundo reviewed the claimant's available treatment records prior to rendering his opinion, which he fully supported. He noted the claimant's reported history and that her physical examination findings showed positive fibromyalgia tender points and limited range of motion . . . .

(Tr. 27).

The ALJ then found at Step 4 that Swanger could perform her past work as a short order cook and further concluded at Step 5 that she retained the capacity to work as would be able to perform the requirements of representative occupations such as a price marker, DOT # 209.587-034 (90,000 jobs nationally), as a photocopying machine operator, DOT # 207.685-014 (80,000 jobs nationally), and as a housekeeping, cleaner, DOT # 323.687-014 (200,000 jobs nationally). (Tr. 30-31). Having reached these conclusions, the ALJ determined that Swanger had not met the demanding showing necessary to sustain her claim for benefits and denied her claim.  (Tr. 30-32).

This appeal followed. (Doc. 1). On appeal, Swanger challenges the adequacy of the ALJ's RFC determination on multiple scores, and specifically asserts that the

ALJ erred in failing to include any reaching restrictions in the plaintiff's RFC. This case is fully briefed and is, therefore, ripe for resolution. As discussed in greater detail below, we find that the ALJ's failure to adequately explain the complete absence of any reaching restrictions in Swanger's RFC, warrants a remand of this case given the evidence which revealed that her ability to reach overhead was severely compromised. Accordingly, we recommend that this decision be remanded for further consideration by the Commissioner.

## III.    <u>Discussion</u>

### A.    <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." <u>Ibid.</u>; <u>see, e.g., Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S.Ct. 206. <u>See Dickinson v. Zurko</u>, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)

12

(comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether Swanger is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's

findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B. **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and RFC. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's RFC. The RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this

burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's [RFC] without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F.Supp.2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always

17

base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. <u>See</u> <u>Titterington</u>, 174 F. App'x 6; <u>Cummings</u>, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's

RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. <u>Burns</u>, 312 F.3d 113; <u>see also</u> <u>Rathbun</u>, 2018 WL 1514383, at *6; <u>Metzger,</u> 2017 WL 1483328, at *5.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999).

This principle applies with particular force to a claimant's limitations in terms of reaching and reaching overhead. Therefore, when an ALJ fashions an RFC which does not fully account for and address reaching restrictions, a remand is often

19

necessary. <u>See</u> <u>Stockett v. Comm'r of Soc. Sec.</u>, 216 F. Supp. 3d 440, 461 (D.N.J. 2016); <u>Gamret v. Colvin</u>, 994 F. Supp. 2d 695, 699 (W.D. Pa. 2014).

### C.    <u>This Case Should be Remanded for Further Consideration by the Commissioner.</u>

As we have noted, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter</u>, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck</u>, 181 F.3d at 433. This cardinal principle applies with particular force to several types of assessment made by ALJs. With respect to the instant case, it is well settled that "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 41 (3d Cir. 2001). Therefore, an ALJ must "explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 121 (3d Cir. 2000).

In the instant case, we conclude that the ALJ's RFC determination is not supported by an adequate explanation both with respect to Swanger's reaching restrictions. As we have noted, the clinical evidence reveals that Swanger "was diagnosed with fibromyalgia and rheumatoid arthritis in 2018 with generalized joint pain worse in her shoulders with pain level 8/10, constant, sharp, worse with

repetitive use of the hands and attempting overhead activities. She has stiffness in both shoulders." (Tr. 72). X-rays and other tests confirmed these diagnoses and by May 17, 2021, one of the plaintiff's treating doctors, Dr. Navalkowsky, indicated that Swanger suffered from rheumatoid arthritis involving multiple sites and stated that she "is unable to work." (Tr. 726).

In addition, Swanger reported on January 15, 2021 that her impairments severely limited her ability to reach stating that: "my whole body and all my movements are affected by the arthritis." (Tr. 233). These limitations were confirmed in a third-party report completed by Swanger's mother on January 6, 2021, which also stated that her ability to reach was impaired, noting that: "all body movement is affected by arthritis." (Tr. 223).

Further, every medical source who actually treated or examined the plaintiff opined that her ability to reach was significantly compromised. For example, on April 12, 2021, Dr. Ahmed Kneifati, a consulting physician, conducted a physical examination of Swanger, and found that Swanger's shoulder forward elevation, adduction, and abduction were all severely restricted. (Tr. 690). Dr. Kneifati also found that Swanger could never reach overhead and could only occasionally reach to the side. (Tr. 684). These findings were echoed by Dr. Glenda Cook, one of Swanger's treating physicians. On April 21, 2022, Dr. Cook completed a physical

residual functional capacity questionnaire for Swanger which opined that Swanger could reach overhead "0 %" of the time. (Tr. 995).

This substantial body of consistent and mutually supportive clinical, anecdotal, and opinion evidence compelled some accommodations of reaching restrictions in Swanger's RFC. Yet, the RFC adopted by the ALJ made no such accommodations. The ALJ's efforts to justify this conclusion by relying upon the outlier opinion of a non-examining physician, Dr. Raymundo, are unpersuasive.

With respect to this medical opinion evidence, as we have noted in the past, prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court has aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules

22

Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found

23

two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). <u>Id</u>. at §§ 404.1520c(b)(3), 416.920c(b)(3).

<u>Andrew G. v. Comm'r of Soc. Sec.</u>, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Recognizing that the two most important factors for determining the persuasiveness of medical opinions are consistency and supportability, we find that the greater weight of the persuasive evidence supported a finding that Swanger suffered from significant reaching limitations. On this score, the clinical evidence, Swanger's reports, the statements of a third party, her mother, and the medical opinion of every treating and examining source agreed that Swanger's ability to reach and reach overhead was significantly impaired. Therefore, these medical opinions fully satisfied the Commissioner's guiding standards of consistency and supportability. The ALJ erred in wholly discounted this body of evidence as entirely unpersuasive.

In contrast, Dr. Raymundo's outlier opinion failed this consistency and supportability test, a fact which was implicitly recognized by the ALJ, who cited evidence relied upon by Dr. Raymundo which undermined the doctor's opinion, stating that:

> As a State agency consultant, Dr. Raymundo reviewed the claimant's available treatment records prior to rendering his opinion, which he fully supported. He noted the claimant's reported history and that her physical examination findings showed positive fibromyalgia tender points and limited range of motion . . . .

(Tr. 27).

Moreover, given this evidence, the RFC's complete failure to include any reaching limitations was plainly prejudicial since all of the proposed jobs that the ALJ concluded Swanger could perform required a significant degree of reaching. See DOT code 313.374-014 Cook, Short Order, 1991 WL 672717, (frequent reaching); DOT code 209.587-034 Marker, 1991 WL 671802, (frequent reaching); DOT code 207.685-014 Photocopying-Machine Operator, 1991 WL 671745, (frequent reaching); DOT code 323.687-014 Cleaner, Housekeeping, 1991 WL 672783, (frequent reaching).

Given this constellation of factors, the ALJ's failure to incorporate further limitations on her ability to reach into this RFC was in error. In our view, more is needed here given this disparity between the RFC and the evidence. Thus, we conclude that the ALJ's decision in this case is not supported by substantial evidence, as the ALJ did not offer an adequate explanation for lack of any reaching limitations in the RFC. Accordingly, we recommend that the district court remand this case to the Commissioner for further consideration of this evidence. Because we

have found a basis for remand on these grounds, we need not address Swanger's remaining arguments. To the extent that any other error occurred, it may be remedied on remand. Yet, while we recommend this result, we note that nothing in this recommendation should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV.    <u>Recommendation</u>

For the foregoing reasons, IT IS RECOMMENDED THAT this case should be REMANDED to the Commissioner for further administrative proceedings consistent with this Report and Recommendation.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before

the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of September 2024.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge